UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

NICHOLAS STALZER,

        Plaintiff,                  Case No. 1:07-cv-686

v.                                          HON. JANET T. NEFF

STEVE HUNT,

        Defendant.
_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. On October 15, 2007, the Court issued an opinion and order dismissing Plaintiff's action against all of the named Defendants, except Defendant Steve Hunt. The Court ordered service of Plaintiff's complaint against Defendant Hunt. On November 27, 2007, Defendant Hunt filed a motion for summary judgment (Dkt 12) on the ground that Plaintiff failed to exhaust his available administrative remedies. Plaintiff filed a response (Dkt 16) on or about December 14, 2007. Upon review, the Court will grant Defendant's motion for summary judgment based upon Plaintiff's failure to exhaust his available administrative remedies.

### Applicable Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for

determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

A prisoner's failure to exhaust his administrative remedies is an affirmative defense for which Defendants have the burden to plead and prove. *Jones v. Bock*, , 549 U.S. 199; 127 S. Ct. 910, 919-21 (2007). A moving party without the burden of proof need show only that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence

is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## Facts

Plaintiff is incarcerated in FCI Elkton pursuant to a criminal conviction in this Court, but the events giving rise to the complaint occurred while he was in the custody of the Michigan Department of Corrections (MDOC). In his *pro se* complaint, Plaintiff sues Grand Rapids Correctional Center (GRCC) Corrections Officer Steve Hunt regarding an incident that occurred in May 2005. Plaintiff was arrested for driving with a suspended license and spent five days in the county jail. While he was at the jail, he received his medication and was permitted to possess nitroglycerine pills. When he was released from jail, he was returned to the GRCC. A couple of hours after he arrived at the center, he began to experience chest pains. Plaintiff did not have his medication or nitroglycerine pills. Plaintiff reported his pain to Defendant Hunt, who told Plaintiff to go back to his cell and come back later if he did not feel better. Plaintiff went back to Hunt a second time and told him that he did not have his nitroglycerine pills. Hunt took a bottle out of his pocket and said "I have mine," and sent Plaintiff back to his cell. Plaintiff came out a third time complaining of chest pains, but Hunt refused to call an ambulance. Plaintiff alleges that "I went back and fell out dead on the floor[,] EMS came and shocked me 6 times and took me to the hospital and the end result was 2 1/2 weeks in a coma and another shunt in my heart." (Compl., 4, Dkt 1.)

3

For relief, Plaintiff seeks compensatory damages of $85,000, as well as punitive damages.

## MDOC Grievance Policy

MDOC Policy Directive 03.02.130 (effective Dec. 19, 2003)[1], sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control *Id.* at ¶ R. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ R, X. The Policy Directive also provides the following directions for completing grievance forms: "The issues shall be stated briefly. Information provided shall be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ T (emphasis in original). The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within five business days of the response, or if no response was received, within five days after the response was due. *Id.* at ¶¶ R, DD. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances. *Id.* at ¶ FF. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶

---

[1] The MDOC amended Policy Directive 03.02.130 on July 9, 2007. However, the 2003 version of the policy directive was in effect at all times applicable to this lawsuit.

R, HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ HH. The Prisoner Affairs Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ U. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved . . . ." *Id.*

## Discussion

Defendant claims that he is entitled to summary judgment because Plaintiff failed to exhaust his available administrative remedies. Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 127 S. Ct. at 922-23; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 127 S. Ct. at 922-23.

In interpreting the PLRA, it is appropriate to look for guidance to the substantively similar exhaustion rules applicable in habeas cases. *Woodford*, 548 U.S. at 92. In the habeas corpus

context, a petitioner is required to properly present his federal claims through one complete round of the State's established appellate review process. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). "To 'protect the integrity' of the federal exhaustion rule, we ask not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies . . ." *Id.* at 848 (citation omitted; emphasis in original). In habeas, the sanction for failing to exhaust properly (preclusion of federal review) is called procedural default. *Woodford*, 548 U.S. at 92. To determine whether a petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the last state court rendering judgment on the claim at issue actually enforced the state procedural rule so as to bar that claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir. 2004); *accord Lancaster v. Adams*, 324 F.3d 423, 436-37 (6th Cir. 2003).

Under the procedural default component of § 1997e(a), an inmate's claims are procedurally defaulted if he fails to complete the administrative review process in accordance with the deadlines and other applicable procedural rules and prison officials actually relied upon the procedural rule to bar review of the grievance. *See Johnson v. Meadows*, 418 F.3d 1152, 1159 (11th Cir. 2005), *cert. denied*, 126 S. Ct. 2978 (2006); *Spruill v. Gillis*, 372 F.3d 218, 222 (3rd Cir. 2004) (holding that "the determination whether a prisoner has 'properly' exhausted a claim (for procedural default purposes) is made by evaluating the prisoner's compliance with the prison's administrative regulations.") Moreover, just as procedural default in the federal habeas corpus context must be predicated on an adequate and independent state ground, the procedural requirements of a prison

grievance system may not be imposed in a way that offends the Federal Constitution or the intended purposes of § 1997e(a). *See Spruill*, 372 F.3d at 232.

In this case, Plaintiff wrote a Step I Grievance on October 9, 2006, regarding the incident alleged in his complaint. (*See* Grievance No. PYG07012-F, Pl.'s Ex. D, Dkt 16-2.) Plaintiff stated that the "Date of Incident" was May 29, 2005. Plaintiff named Officer Hunt in his grievance and made allegations consistent with those set forth in the complaint. Plaintiff's Step I grievance was rejected as untimely on October 16, 2006. Plaintiff claims that he attempted to appeal his grievance to Step II, but was unable to obtain Step II and III appeal forms.

Defendant claims that Plaintiff's grievance was untimely, and, thus, he failed to properly exhaust his claim in accordance with the grievance policy. In response to Defendant's motion, Plaintiff contends that his grievance was not timely filed because "he didn't become aware of the situation that accurred [sic] in May of 2005 . . . until a week before the grievance was filed." (Pl.'s Resp. Br., 3, Dkt 16.) Plaintiff's explanation is untenable as he was present during the incident with Officer Hunt and immediately could have filed a grievance concerning Hunt's refusal to summon medical assistance. Even if Plaintiff's medical condition prevented him from filing a grievance within five days of the incident, Plaintiff fails to provide a legitimate explanation for his sixteen-month delay in filing a grievance. Plaintiff's failure to file a grievance within in the time provided by the MDOC grievance policy renders his claim unexhausted. *See Woodford*, 548 U.S. 81.

As an alternative theory, Defendant contends that Plaintiff failed to properly exhaust his claim because he did not appeal his grievance to Steps II and III. A prisoner generally is required to complete one complete round of the state's established grievance procedure. *See Woodford*, 548 U.S. at 92. However, a prisoner only is required to exhaust "available" administrative remedies. In this case, Plaintiff contends that he attempted to obtain Step II and III appeal forms, but his

7

requests were ignored. Because a genuine issue of material fact exists concerning whether Steps II and III of the grievance process were available to Plaintiff, Defendant Hunt fails to meet his burden of proof on this theory.

Plaintiff makes a related argument that under MDOC policy, he was entitled to appeal his grievance to Steps II and III. (See MICH. DEP'T. OF CORR., Policy Directive 03.02.130, ¶ I ("A grievant whose grievance is rejected may appeal the rejection to the next step as set forth in this policy.")) The Sixth Circuit and other circuit courts have held that there is no constitutionally protected due process right to an effective prison grievance procedure. *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Plaintiff, therefore, did not have a constitutional right to appeal his grievance to Steps II and III. Under the rules of procedural default, the last state court rendering judgment on the claim at issue must have actually enforced the state procedural rule so as to bar that claim. *See Hicks,* 377 F.3d at 551. The Step I grievance response, which was the last decision rendered by prison officials on Plaintiff's grievance, actually rejected the grievance as untimely. Thus, Plaintiff's claim against Officer Hurt is procedurally defaulted.

## **Conclusion**

For the foregoing reasons, Defendant Hunt's motion for summary judgment (Dkt 18) will be granted and Defendant Hunt will be dismissed without prejudice, which will conclude Plaintiff's action.

An Order and Final Judgment consistent with this Opinion will be entered.


Dated: September 12, 2008             /s/ Janet T. Neff
                                       JANET T. NEFF
                                       United States District Judge